# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHUQU LI, | **)** | |
| | **)** | |
| Petitioner, | **)** | |
| | **)** | |
| v. | **)** | Case No. CIV-26-909-R |
| | **)** | |
| CHRIS GANTT, | **)** | |
| | **)** | |
| Respondents, et al.[1] | **)** | |
| | **)** | |

## REPORT AND RECOMMENDATION

Petitioner Shuqu Li, a noncitizen proceeding pro se,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge

---

[1] Respondent Chris Gantt is the current Warden of the Cimarron Correctional Facility and is substituted for former Warden Scarlet Grant as a Respondent. https://www.corecivic.com/facilities/cimarron-facility (last visited June 25, 2026). Warden Gantt is not a federal official, and the response is not filed on his behalf. *See* Doc. 7, at 1 n.1. On May 18, 2026, counsel for Robert Cerna, Dallas Field Office Director for US. Immigration & Customs Enforcement (ICE), the appropriate Respondent, entered an appearance in this proceeding. S*ee* Doc. 6.

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)). This Court construes "[a] pro se litigant's pleadings . . . liberally," holding them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[3] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

David L. Russell referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 7 and Petitioner replied, Doc. 8. So, the matter is at issue.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition in part and order his immediate release.

## I.      Factual background and procedural history.

Petitioner is a citizen of China who entered the country on December 10, 2023. Doc. 8, at 1. The Department of Homeland Security (DHS) placed him in removal proceedings through the issuance of a Notice to Appear (NTA), charging him as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA).[4] *Id.* at 2. He maintains that DHS released him on his own recognizance. *Id.* He timely applied for asylum that same month. *Id.*

On August 14, 2025, ICE arrested Petitioner while he was working at a farm in Frederick, Oklahoma. *Id.* He maintains he fully complied with his conditions of release before his arrest and that ICE had no warrant for his

---

[4]      This section is codified at 8 U.S.C. § 1182(a)(6)(A)(i). That section provides that a noncitizen who is present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General is ineligible to be admitted to the United States. *Id.* § 1182(a)(6)(A)(i).

arrest. Doc. 1, at 6; Doc. 8, at 8. On October 8, 2025, the Immigration Court (IC) held a bond hearing for Petitioner where the Immigration Judge (IJ) determined the IC lacked jurisdiction to hear the matter. Doc. 8, at 2; Doc. 1, at 6. Respondent does not contest Petitioner's allegations. *See* Doc. 7.

## II.    Petitioner's claims.

Petitioner raises three grounds for relief:

(1)    Illegal arrest and detention without notice in violation of his rights to substantive and procedural due process;

(2)    Violation of the Fifth Amendment (Due Process) because he received no bond hearing; and

(3)    Unlawful arrest under the Immigration and Nationality Act (INA) because of his warrantless arrest.

Doc. 1, at 6-7; Doc. 8, at 3-4. Petitioner asks the Court to order Respondent to immediately release him under his previous conditions of release or, in the alternative, order Respondent to provide him with a prompt and constitutionally adequate individualized custody determination within seven days before a neutral adjudicator at which the Government bears burden of proving, by clear and convincing evidence, that his continued detention is necessary, and to consider alternatives to detention during such hearing; enjoin his future illegal arrest and detention; grant expeditious relief; shorten

any objection time; and enter a show cause order as to why relief should not be granted within three days.[5] *Id.* at 6-7.

### III.   Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

### IV.   Discussion.

#### A.   Petitioner has the right to procedural due process.

Petitioner claims his ongoing detention without a hearing violates his rights under the Due Process Clause of the Fifth Amendment. Doc. 1, at 6-8. To the extent Respondent substantively addresses Petitioner's procedural due process argument, he maintains Petitioner is subject to mandatory detention

---

[5]   The Court addressed Petitioner's last request in its Order for a Response. Doc. 5.

under 8 U.S.C. § 1225(b) of the INA and is therefore categorically ineligible for a bond hearing. Doc. 7, at 1-2.

Section 1225(b)(2) mandates detention for noncitizens who are "applicant[s] for admission, [where] the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). And under § 1225(b)(1)(A)(i), "[i]f an immigration officer determines that [the noncitizen] . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) . . ., the officer shall order the [noncitizen] removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." An individual detained as inadmissible upon inspection at the border can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)).

Respondent does not dispute that Petitioner was released on his own recognizance. S*ee* Doc. 7. The reason for Petitioner's release remains unclear, but "it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *See Rafibaev v. Noem*, 2026

5

WL 607559, at *2 (D. Colo. Mar. 4, 2026). And, likewise, § 1225(b)(2) cannot apply to Petitioner as "a noncitizen paroled into the country." *Qasemi v. Francis,* 2025 WL 3654098, at *7 (S.D.N.Y. Dec. 17, 2025) (("[A] noncitizen paroled into the country—*i.e.*, a noncitizen residing in the United States—is not an arriving alien.").

### B. Section 1226 governs Petitioner's detention.

Section 1226 governs "the usual removal process." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *2 (N.D. Cal. Sept. 12, 2025) (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)). The § 1226 process starts when the Government files an NTA with an immigration court. *Id.* at *1. Section 1226 then lets the Government arrest and detain noncitizens or release them on bond or on conditional parole. *Id.* Release is required if the noncitizen can show they are not a danger and will show up at future hearings. *Id.* If detention continues, the noncitizen gets a bond hearing before an IJ. *Id.* To be released, noncitizens must show by a preponderance of the evidence that they are not a security threat, community danger, or flight risk. *Id.*

The initial decision to pursue Petitioner's detention "under § 1226(a) precludes the Government from later 'switch[ing] tracks' to subject him to mandatory detention under § 1225(b)(2)." *Gutierrez v. Chesnut*, 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) (citing *Salcecdo Aceros*, 2025 WL

2637503, at *8). The rule is simple: "Sections 1226(a) and 1225(b) cannot be applied simultaneously." *Salcecdo Aceros,* 2025 WL 2637503, at *8.

The Court concludes that § 1226(a) governs Petitioner's detention.[6]

### C.    Petitioner is entitled to relief under § 1226(a).

Petitioner is entitled to retain the legal protections under § 1226(a) that Respondent cannot erase by simply "switching tracks." *Salcedo Aceros*, 2025 WL 2637503, at *8; *Briceno Solano v. Mason*, 2026 WL 311624, at *14 (S.D.W. Va. Feb. 4, 2026).

To release Petitioner, DHS had to determine that his release "would not pose a danger to property or persons," and that he was "likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). And Respondent identifies no change in circumstances that required revocation of Petitioner's conditional release.

---

[6]    Although not raised by Respondent, Petitioner's request to seek asylum request does not change this outcome. This Court has "declined to find" either refusing to voluntarily depart or seeking asylum "'constitutes 'seeking admission' for purposes of this subsection.'" *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (quoting *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026)); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr*, 175 F.4th 1258, 1284 (11th Cir. 2026) ("This argument fails at the gate. Section 1225(b)(2)(A) makes it clear that an applicant for admission's status as one 'seeking admission' becomes relevant upon examination by an immigration officer, which occurs *before* a § 1229a proceeding even commences." (quoting 8 U.SC § 1225(b)(2)(A)).

So he must be released. *See Barbosa da Cunha v. Freden,* 175 F.4th 61, 70 (2d Cir. 2026) (concluding the petitioner's detention was "governed by Section 1226(a), not Section 1225(b)(2)(A)," and explaining that its holding "allows noncitizens . . . who are already present in the United States and are determined not to be a flight risk or danger to the community to be released on bond under Section 1226(a) while their removal proceedings are pending").

### D.    Petitioner's procedural due process claim.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.,* 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.").

"The [INA] establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez,* 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez,* 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the Government to use

8

when removing certain noncitizens from the United States and, in some cases, detaining them.").

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482

9

(1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at \*3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondent deprived Petitioner of his protected status when ICE detained him and placed him into custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending nearly two years in the United States before his present detention. By initially releasing Petitioner on parole under § 1226(a), the Government necessarily determined that he was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b), and there is no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for nearly two years, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional

10

limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondent does not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in release grew even stronger as he worked and "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482; *see* Doc. 1, at 7. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where, as he alleges, he was arrested without any notice of the reason and provided no hearing (which Respondent does not dispute).

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Petitioner received no procedural safeguards to determine whether his detention is justified, and thus Respondent detained him without any stated cause. This factor weighs in Petitioner's favor. *See, e.g., E.A. T.-B.*

11

*v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the [G]overnment's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza*, 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not deemed necessary for nearly two years.

**E.    Remedy.**

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243*; see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990))).

The undersigned recommends that Respondent's misapplication of the INA and Petitioner's continuing due process violation as a result of his unlawful detention require his immediate release subject to the same

conditions of his earlier release.[7] This view is shared by numerous courts across the country.[8]

## V.  Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant in part** Petitioner's habeas application and **order his immediate release.**[9] **The undersigned also recommends the Court order**

---

[7]  "Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur. Those cases do not examine the effect of a pending asylum petition or a clear conditional release order under § 1226." *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026).

[8]  *See Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, --- F.Supp.3d - ---, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo,* 2026 WL 592355, at *10 (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

[9]  Should the Court determine a bond hearing is the appropriate remedy, the undersigned recommends that, given Petitioner's prolonged detention under the incorrect statute, the Court should find that it is more appropriate for the Government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (citing *L.G.*

14

**Respondent certify compliance with the Court's order by filing a status report within ten business days of the Court's order** and to promptly provide a copy of the Court's order to Counsel for the Warden of the Cimarron Correctional Facility. Finally, the Court should order that Respondent cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the Government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.[10]

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by June 29, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure

---

*v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). "Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Under these circumstances, the Government ought to bear the burden of proving that Petitioner poses a danger to the community or a risk of flight such that he should remain in detention. The clear and convincing standard that generally "applies to civil detention where liberty is at stake" is appropriate here as well. *See L.G.*, 744 F. Supp. 3d at 1186 (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979)).

[10]   The undersigned finds that the Court need not reach Petitioner's remaining claim for warrantless arrest in violation of the INA as the Court can grant him relief under § 1226(a).

72.[11] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

      **ENTERED** this 25th day of June, 2026.

        SUZANNE MITCHELL
        UNITED STATES MAGISTRATE JUDGE

---

[11]     Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").